1  COOLEY LLP
2  MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
   WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
3  KYLE C. WONG (224021) (kwong@cooley.com)
   DEVON HANLEY COOK (262626) (dhanleycook@cooley.com)
4  101 California Street, 5th Floor
   San Francisco, CA  94111-5800
5  Telephone:     (415) 693-2000
   Facsimile:     (415) 693-2222

6  Attorneys for Defendant
   Twitter, Inc.
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12 | WILFORD RANEY, individually and on | Case No. 3:15-cv-04191-WHA
   | behalf of all others similarly situated, |
13 |                                    | **DEFENDANT TWITTER, INC.'S MOTION**
   |                     Plaintiff,     | **TO DISMISS PLAINTIFF'S FIRST**
14 |                                    | **AMENDED CLASS ACTION COMPLAINT**
   |          v.                        |
15 |                                    | Date:        January 28, 2016
   | TWITTER, INC., a Delaware corporation, | Time:        8:00 a.m.
16 |                                    | Courtroom:   8 (19th Floor)
   |                     Defendant.     | Judge:       Hon. William Alsup
17 |                                    | Trial Date:  Not yet set
18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-CV-04191-WHA

# Table of Contents

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 1

I.     INTRODUCTION ............................................................................................................. 1

II.    STATEMENT OF FACTS ............................................................................................... 3

III.   LEGAL STANDARDS...................................................................................................... 5

IV.   ARGUMENT ..................................................................................................................... 6

      A.    Plaintiff's Wiretap Claim Fails As A Matter Of Law For Multiple Reasons. ........ 6

            1.    Direct Messages processed within Twitter's systems are not "intercepted" "in transmission" under the Wiretap Act ............................ 6

            2.    The alleged wrongful conduct falls within the "ordinary course of its business" exception under the Wiretap Act. .......................................... 9

            3.    Plaintiff expressly consented to twitter's processing of DM links ........... 14

      B.    Plaintiff's CIPA Claim (Count II) Also Fails As A Matter Of Law .................... 16

            1.    Section 631 does not cover DMs or other electronic communications. ........................................................................................ 16

            2.    Even if CIPA covers electronic communications, Plaintiff's claim still fails for multiple reasons ................................................................... 19

      C.    Plaintiff Fails to State a Claim for Intrusion Upon Seclusion.............................. 20

            1.    Plaintiff fails to allege an injury-in-fact .................................................. 20

            2.    Plaintiff fails to allege intrusion into a private place, conversation, or matter ................................................................................................... 21

            3.    Twitter's processing is not highly offensive or an egregious breach of social norms .......................................................................................... 22

V.     CONCLUSION................................................................................................................ 24

1

**Table of Authorities**

2

**Page(s)**

3

**Cases**

4

*Apple v. Superior Court,*
   56 Cal. 4th 128 (Cal. 2013) ...................................................................................17

5

6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................................................9

7

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................................................5

8

9

*Bohach v. City of Reno,*
   932 F. Supp. 1232 (D. Nev. 1996) .........................................................................7

10

*Bunnell v. Motion Picture Ass'n of Am.,*
   567 F. Supp. 2d 1148 (C.D. Cal. 2007) .................................................6, 7, 9, 19

11

12

*Campbell v. Facebook Inc.,*
   77 F. Supp. 3d 836, 841 (N.D. Cal. 2014) .....................................................10, 13

13

14

*City of Richmond v. Southern Bell Tel. & Tel. Co.,*
   174 U.S. 761 (1899) ..............................................................................................17

15

16

*Crowley v. CyberSource Corp.,*
   166 F. Supp. 2d 1263 (N.D. Cal. 2001) .................................................................7

17

*Deteresa v. Am. Broad. Companies, Inc.,*
   121 F.3d 460 (9th Cir. 1997)...........................................................................20, 23

18

19

*In re DoubleClick Inc. Privacy Litig.,*
   154 F. Supp. 2d 497 (S.D.N.Y. 2001)..............................................................8, 15

20

21

*In re Facebook Internet Tracking Litig.,*
   No. 5:12-md-02314-EJD, 2015 U.S. Dist. LEXIS 145142 (N.D. Cal. Oct. 23,
   2015) ......................................................................................................................21

22

23

*Folgelstrom v. Lamps Plus, Inc.,*
   195 Cal. App. 4th 986 (2011) ..........................................................................23, 24

24

25

*Fraser v. Nationwide Mut. Ins. Co.,*
   352 F.3d 107 (3d Cir. 2003).....................................................................................7

26

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
   528 U.S. 167 (2000).................................................................................................5

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-CV-04191-WHA

1

2

**Table of Authorities**
**Continued**

**Page(s)**

3

*Global Policy Partners, LLC, v. Yessin,*
4            686 F. Supp. 2d 631 (E.D. Va. 2009).........................................................................6

5

*In re Google Inc. Gmail Litig.,*
            No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26,
6            2013) ...............................................................................................................12, 16

7

*In re Google, Inc. Privacy Policy Litig.,*
8            No. C-12-01382-PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) ......................8

9

*In re Google, Inc. Privacy Policy Litig.,*
            No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...........10, 13, 21

10

*In re Google, Inc. Street View Elec. Commc'ns Litig.,*
11           794 F. Supp. 2d 1067 (N.D. Cal. 2011) .................................................................19

12

*Hall v. EarthLink Network, Inc.,*
13           396 F.3d 500 (2d Cir. 2005).........................................................................2, 10, 11

*Hernandez v. Hillsides, Inc.,*
14           47 Cal. 4th 272 (2009) ........................................................................................23

15

*Hill v. Nat'l Collegiate Athletic Ass'n,*
16           7 Cal. 4th 1 (1994) .........................................................................................21, 22

17

*In re iPhone Application Litig.,*
            844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..............................................................12, 24
18

*Kairy, Brown, Dickson, Osmun, Singhdietz v. SuperShuttle International,*
19           660 F.3d 1146 (9th Cir. 2011)..............................................................................16

20

*Keene Corp. v. United States,*
21           508 U.S. 200 (1993) ............................................................................................13

22

*Kirch v. Embarq Management Co.,*
            702 F.3d 1245 (10th Cir. 2012).........................................................................11, 13
23

*Kirch v. Embarq Management Co.,*
24           No. 10-2047-JAR, 2011 WL 3651359 (D. Kan. Aug. 19, 2011).............................12

25

*Konop v. Hawaiian Airlines, Inc.,*
            302 F.3d 868 (9th Cir. 2002).............................................................................6, 7, 9
26

27

*Loder v. City of Glendale,*
            14 Cal. 4th 846 (1997) .........................................................................................20
28

Cooley LLP
Attorneys At Law
San Francisco

iii.

Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

**Table of Authorities**
**Continued**

Page(s)

*Low v. LinkedIn Corp.*,
   No.11-CV-01468-LHK, 2011 U.S. Dist. LEXIS 130840 (N.D. Cal. Nov. 11,
   2011) ................................................................................................................21

*Miller v. Nat'l Broad. Co.*,
   187 Cal. App. 3d 1463 (1986)...........................................................................23

*Ni v. Slocum*,
   196 Cal. App. 4th 1636 (2011) .........................................................................17

*Pub. Util. Dist. No. 1 v. IDACORP, Inc.*,
   379 F.3d 641 (9th Cir. 2004)............................................................................20

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008) *aff'd,* 380 F. App'x 689 (9th Cir. 2010) ...................24

*Shulman v. Group W Prods., Inc.*,
   18 Cal. 4th 200 (1998) ...............................................................................20, 21

*Smith v. United States*,
   508 U.S. 223 (1993)..........................................................................................10

*St. Clare v. Gilead Scis., Inc.*,
   536 F.3d 1049 (9th Cir. 2008)............................................................................5

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
   782 F. Supp. 2d 1059 (E.D. Cal. 2011)..............................................................5

*Steve Jackson Games, Inc. v. U.S. Secret Service*,
   36 F.3d 457 (5th Cir. 1994)................................................................................7

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) .............................................................22

*Sunset Tel. & Tel. Co. v. City of Pasadena*,
   161 Cal. 265 (1911) ..........................................................................................17

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004)........................................................................7, 9

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003)..........................................................................20

*United States v. Smith*,
   155 F.3d 1051 (9th Cir. 1998)............................................................................8

Cooley LLP
Attorneys At Law
San Francisco

iv.

Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

**Table of Authorities**
**Continued**

Page(s)

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..........................................................................14, 15, 22

*Zbitnoff v. Nationstar Mortg., LLC*,
    No. C 13-05221 WHA, 2014 WL 1101161 (N.D. Cal. Mar. 18, 2014) ..................................22

**Statutes**

18 U.S.C.
    § 2510..................................................................................................................... *passim*
    § 2511(2) ...............................................................................................13, 14, 15, 20
    § 2701.....................................................................................................................6

Cal. Penal Code
    § 629....................................................................................................................18
    § 629.51................................................................................................................18
    § 630......................................................................................................................1
    § 631.................................................................................................................. *passim*
    § 637.2.................................................................................................................19

**Other Authorities**

Federal Rules of Civil Procedure
    12(b)(1) ...............................................................................................................1, 5
    12(b)(6) ...............................................................................................................1, 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-CV-04191-WHA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

To ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 28, 2016 at 8:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California defendant Twitter, Inc. ("Twitter") will and hereby moves to dismiss ("Motion") Plaintiff's First Amended Class Action Complaint ("FAC"). Twitter's Motion is made under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the concurrently filed Declaration of Kyle C. Wong ("Wong Decl.") and Request for Judicial Notice ("RJN"), and upon such other matters as may be presented to the Court at the time of hearing or otherwise.

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Has Plaintiff stated a claim under the Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*, where the practices at issue (a) involve automated processing of communications on Twitter's services and not communications in transmission; (b) are customary and routine practices supported by legitimate business purposes; and (c) are disclosed in Twitter's terms and policies to which Plaintiff agreed.

2.     Has Plaintiff stated a claim under the California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq.*, where (a) the terms of the statute, enacted in 1967, do not contemplate electronic communications and have not been amended to address such communications; (b) the practices at issue involve automated processing of communications not in transmission; and (c) a private right of action is available only to individuals "who have been injured" by a violation.

3.     Has Plaintiff stated a claim under the common law for intrusion upon seclusion, where (a) Plaintiff alleges no concrete injury sufficient to meet Article III standing requirements; (b) Plaintiff has not demonstrated a reasonable expectation of privacy in the automated processing of links in his Direct Messages ("DM"); and (c) the automated processing of links serves valid business purposes and is not an egregious breach of social norms.

## I.    INTRODUCTION

Plaintiff's Complaint should be dismissed because it seeks to manufacture a purported

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-cv-04191-WHA

privacy violation out of routine business conduct.  Plaintiff claims that Twitter engages in illegal "interceptions" (under the Wiretap Act[1] and CIPA) that violate the "seclusion" of his messages (under tort law) by processing hyperlinks in DMs between Twitter users.   But Twitter's processing is entirely automated with no human review; applies without regard to the meaning of any message; and is done for legitimate business purposes that are critical to Twitter's services.  Indeed, Plaintiff acknowledges that processing links allows Twitter to prevent spam and malware from proliferating among Twitter users, among other business purposes.  These practices do not implicate any privacy or other protected interest recognized under any viable legal theory, and all claims should be dismissed as a matter of law.

First, the Wiretap Act is limited to precisely what its name suggests: the use of illegal devices to wiretap communications as they are being transmitted.  The statute does not apply to processing communications on a service provider's servers, including while in temporary storage, because that is not an "interception" under the statute.  The Wiretap Act simply cannot apply to Twitter's processing of DMs, which occurs exclusively within Twitter's systems.  Moreover, the statute exempts service providers' conduct (1) in the ordinary course of its business and (2) with at least one party's consent to the alleged interception.  These exceptions preclude Plaintiff's claim for additional reasons because Twitter's processing of DM links is a routine practice supported by legitimate business purposes and is disclosed in Twitter's terms to which Plaintiff and all other users agree.

Second, Plaintiff's CIPA claim fails for similar reasons, but also suffers from a fundamental defect: CIPA does not govern the processing of electronic communications.  As detailed below, the terms of CIPA, its legislative history, and the applicable rules of statutory interpretation all confirm that CIPA does not reach modern forms of electronic communications like DMs.  Indeed, the statute was enacted in 1967, when the Legislature could not have

---

[1] Plaintiff refers to his claim as an "ECPA" claim but this is a misnomer.  ECPA was the statute that "amended the Federal wiretap law" and was "divided into Title I, which governs unauthorized interceptions of electronic communications …, and Title II, which governs unauthorized access to stored communications …." *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 503 (2d Cir. 2005).  Twitter thus refers to the federal claim as the Wiretap Act claim.

Cooley LLP
Attorneys At Law
San Francisco

2.

Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

1    contemplated anything resembling Twitter DMs, and it has never been amended to expressly

2    address electronic communications, despite multiple opportunities for the Legislature to do so.

3          Third, Plaintiff's intrusion upon seclusion claim fails because the FAC contains no

4    allegations of injury-in-fact sufficient to meet the standing requirements under Article III.

5    Plaintiff, in fact, alleges no injury at all.  Moreover, Plaintiff had no reasonable expectation that

6    links in his DMs would be free from processing, given his express agreement to Twitter's terms

7    that plainly permit such processing.  Nor has Plaintiff met the stringent requirement of showing

8    that he has been impacted by "highly offensive" conduct that amounts to an "egregious breach of

9    social norms."  Far from it, as the practices at issue are routine and fully automated processes that

10   bear no resemblance to any circumstance that any court has recognized as a violation of this

11   highly specialized tort claim.

12         For these reasons, Twitter respectfully asks the Court to dismiss the FAC with prejudice.

13   **II.    STATEMENT OF FACTS**

14         **About Twitter**:  Twitter is an online social network that allows its users to share short

15   messages (limited to 140-characters) called "Tweets" and to view Tweets from other users that

16   they "follow."  (FAC ¶ 1.)  In addition to sharing and reviewing public Tweets, Twitter users can

17   also send DMs to one another, which are routed through Twitter's systems and involve only

18   Twitter users.  (*Id.* ¶¶ 24-29.)   Twitter users can use DMs to share photos and other content, such

19   as hyperlinks to other web pages.  (*See id.* ¶ 27.)   Twitter is a free service and has over 300

20   million active users.  (*Id.* ¶ 13.)

21         **Twitter's Processing of Links**:  To protect its users from, among other things, malware,

22   phishing attacks, and other malicious activity, Twitter's internal systems identify and process

23   links within DMs and Tweets.  For instance, as Plaintiff acknowledges, a "link converted by

24   Twitter's link service is checked against a list of potentially dangerous sites.  Users are warned

25   with [an] error message … when clicking on potentially harmful URLs."  (*Id.* ¶ 21.)

26         Twitter processes links for other business purposes as well.  Plaintiff's FAC focuses on

27   Twitter's automated process of altering links so that when users clicks on the modified links, they

28   are directed momentarily through Twitter's servers before being directed to the ultimate web

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

**DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-CV-04191-WHA**

page.  This achieves various business purposes, as Plaintiff recognizes, stating that "Twitter is responsible for generating a large amount of internet traffic for other websites."  (*Id.* ¶ 17.)  By routing Twitter users who click on DM links initially through a Twitter server, the destination web pages can see that Twitter was the source of the web traffic.  (*Id.* ¶ 19.)  According to Plaintiff's Complaint, this "increases [Twitter's] perceived value to third-party websites and would-be advertisers" and allows Twitter to "negotiate better advertising rates" to help fund Twitter's free services.  (*Id.* ¶ 4.)  Notably, Plaintiff does not allege that this link processing involves any human review.

Moreover, in addition to these business purposes, Twitter also modifies URLs to shorten them for various reasons.  As noted in the FAC, link processing allows users "to share long URLs in a Tweet while maintaining the maximum number of characters for [the] message."  (*Id.* ¶ 21.)  This same character limit applied to DMs until August 12, 2015.[2]  Link processing thus allowed users to share more text in a DM.  In addition, mobile service providers often cap Short Message Service ("SMS") messages at 160 characters.[3]  Twitter's shortening of URLs allows users to receive longer links in DMs within the SMS single message character limit.

**Twitter's Terms of Service and Disclosures:**  To become a Twitter user, individuals agree to Twitter's Terms of Service ("TOS") and the incorporated Privacy Policy.  (FAC ¶ 14; *id.* Ex. A; Wong Decl. Ex. 4.)  Of particular relevance here, the TOS and Privacy Policy provide:

- We may ***modify or adapt your Content*** in order to transmit, display or distribute it over computer networks and in various media and/or ***make changes to your Content*** as are necessary to conform and adapt that Content to ***any requirements or limitations*** of any networks, devices, services or media.  (FAC, Ex. A at 4 (TOS) (emphasis added).)

- Twitter ***may keep track of how you interact with links across our Services***, including our email notifications, third-party services, and client applications, ***by redirecting clicks or through other means***. We do this to help improve our Services, ***to provide more relevant advertising***, and to be able to share aggregate click statistics such as how many times a particular link was clicked on.  (Wong Decl. Ex. 4 (Privacy Policy) (emphasis added).)

---

[2] *See* Wong Decl. Ex. 1 (Twitter.com, *Removing the 140-character limit from Direct Messages*, https://blog.twitter.com/2015/removing-the-140-character-limit-from-direct-messages).
[3] Mobile communications service providers often split SMS messages longer than 160 characters into two texts.  (*See* Wong Decl. Ex. 2 (Twitter "About Direct Messages" page).)

Cooley LLP
Attorneys At Law
San Francisco

4.

Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

- We may also receive Log Data when you *click on, view or interact with links* on our Services, including links to third-party applications. . . . Twitter uses Log Data to . . . customize the content we show you, *including ads*.  (*Id*. (emphasis added).)

- We also reserve the right to *access, read, preserve, and disclose any information* as we reasonably believe is necessary *to . . . detect, prevent*, or otherwise address fraud, *security or technical issues*, . . . or [ ] *protect the rights, property or safety* of Twitter, *its users and the public*.  (FAC, Ex. A at 5 (TOS) (emphasis added).)

Plaintiff's express agreement to these disclosures leaves no room for liability here.

      **The Named Plaintiff.**  Plaintiff Wilford Raney alleges he has used Twitter since 2009 and acknowledges he agreed to the TOS.  (FAC ¶ 45.)  Plaintiff has "tweeted more than 200,000" times.  (*Id*.)  He also claims that "[r]oughly one-third of all tweets … contain hyperlinks to other websites."  (*Id*. ¶ 17.)  Notably, Plaintiff does not allege he was unaware of Twitter's processing of links in tweets and DMs.  Plaintiff also does not allege that he has stopped sending DMs with links since he learned of the alleged practices.

### III.   LEGAL STANDARDS

      The FAC should be dismissed under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Article III of the Constitution limits federal jurisdiction to "cases and controversies" in which a plaintiff has suffered "injury in fact" that is "actual or imminent," "fairly traceable" to the defendant's actions, and likely to "be redressed by a favorable decision"; where a plaintiff fails to allege facts demonstrating these requirements, the case must be dismissed on (12)(b)(1) grounds. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

      To survive the pleading requirements of Rule 12(b)(6), Plaintiff must also allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court need not accept as true "allegations that are merely conclusory, unwarranted, deductions of fact, or unreasonable inferences," *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008), and is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1064 (E.D. Cal. 2011).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-CV-04191-WHA

**IV.   ARGUMENT**

   **A.    Plaintiff's Wiretap Claim Fails As A Matter Of Law For Multiple Reasons.**

      **1.    Direct Messages processed within Twitter's systems are not "intercepted" "in transmission" under the Wiretap Act.**

Federal law addresses electronic communications in two distinct, non-overlapping circumstances—those in electronic storage (addressed under the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, *et seq*.) and those in transmission (addressed under the Wiretap Act).  Thus,

> at any given time, an electronic communication may either be intercepted and actionable under the Wiretap Act, or acquired while in electronic storage and actionable under the SCA. . . .  An electronic communication may not simultaneously be actionable under both the Wiretap Act and the SCA.

*Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007) (*citing Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 879-80 (9th Cir. 2002)).  Given this fundamental distinction, a communication can be "'intercepted' in violation of the Wiretap Act" *only* if it is "acquired" and the acquisition occurs "during transmission, not while it is in electronic storage." *Konop*, 302 F.3d at 878.[4]

Moreover, Congress broadly defined "electronic storage" to encompass "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof . . . ." 18 U.S.C. § 2510(17).  In applying that definition, the Ninth Circuit has explained that "electronic communications are stored at various junctures in various computers between the time the sender types the message and the recipient reads it …." *Konop*, 302 F.3d at 878 n.6.  Critically, the Wiretap Act does not apply to the processing of electronic communications in such "*en route* storage," even if these steps of interim storage occur during the delivery process of a communication.  *Id.* at n.6.   As the Court explained (in the context of emails), the "transmission time of email"—that is, the time when a communication can

---

[4] As described in *Global Policy Partners, LLC, v. Yessin*, 686 F. Supp. 2d 631, 686 (E.D. Va. 2009): "In American football, a ball can only be intercepted when it is 'in flight.'  Once a pass receiver on the offensive team has caught the ball, the window for interception has closed....  In essentially the same way, a qualifying 'intercept' under the [the Wiretap Act] … can only occur where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server…."

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

**DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-cv-04191-WHA**

1   potentially be "intercepted" under the Wiretap Act—"is very short because email travels across

2   the wires at the speed of light." *Id.* In other words, electronic communications are generally in

3   transmission for only milliseconds, and they are protected by the SCA, not the Wiretap Act,

4   during every intermittent stop along the way.

5       Applying these standards, courts have held that the Wiretap Act does not apply where a

6   defendant accesses communications on the servers of an entity providing an electronic

7   communications service ("ECS"). For example in, *Theofel v. Farey-Jones*, the Ninth Circuit held

8   there was no "acquisition contemporaneous with transmission" for purposes of a Wiretap Act

9   claim where the defendant accessed email messages on the servers of an ISP. 359 F.3d 1066,

10  1077 (9th Cir. 2004). This was so even where the overall delivery process was not yet complete

11  because recipients had not yet "open[ed] or read[] the message." *See Bunnell*, 567 F. Supp. 2d at

12  1153 (discussing *Theofel*). Similarly, a defendant's unauthorized access to emails on a

13  company's emails servers is not an "interception" where the emails are in interim storage during

14  delivery to the recipient. *See id.* at 1153; *Steve Jackson Games, Inc. v. U.S. Secret Service*, 36

15  F.3d 457 (5th Cir. 1994). *See also Konop*, 302 F.3d at 878 (holding that unauthorized access to

16  communications on a secure website's bulletin board does not amount to an "interception"). In

17  each of these cases, there was no "interception" because the communications at issue were in

18  temporary storage on a server pending delivery to the recipient, and thus the defendants'

19  unauthorized access to the communication was actionable (if at all) only under the SCA.[5]

20      These established standards bar Plaintiff's Wiretap Act claim as a matter of law because

21  there is no alleged "interception" that occurs "in transmission." Because the DMs at issue are

22  exchanged solely among Twitter users, the processing of these messages occurs solely within

23

---

24  [5] To be clear, the conduct alleged by Plaintiff here also would not be actionable under the SCA

25  because service providers such as Twitter cannot wrongfully access communications stored in
    their own facilities. *See, e.g.*, *Crowley v. CyberSource Corp*., 166 F. Supp. 2d 1263, 1272 (N.D.
    Cal. 2001) (dismissing an SCA claim for wrongful access against Amazon because "Amazon's

26  access to its own systems is not limited under the [SCA]"); *see also Fraser v. Nationwide Mut.
    Ins. Co*., 352 F.3d 107, 115 (3d Cir. 2003) (defendant's access to plaintiff's email, which was

27  stored on the defendant's own email system was not actionable under the SCA); *Bohach v. City of
    Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) ("[Section] 2701(c)(1) allows service providers to

28  do as they wish when it comes to accessing communications in electronic storage. . . .").

Cooley LLP
Attorneys At Law
San Francisco
7.
Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

Twitter's systems.  This case does not involve a situation where, for example, two individuals communicate using two different service providers (for instance, a Yahoo Mail user sending an email to a friend's work email account) and the communication must necessarily be in transmission at some point between the two providers' systems.  Instead, Plaintiff alleges that the processing of a DM occurs on Twitter's systems "after it is sent" by one Twitter user and "before it is received" by another Twitter user.  (FAC ¶ 29.)  This internal processing of DMs within Twitter's systems, as the provider of the ECS service, does not amount to an interception "in transmission" under the standards above.[6]  Nor does Twitter's internal processing meet the related requirement of an "acquisition" in the definition of an "interception."[7]  By applying automated processing to DMs, Twitter does not "acquire" the contents of the messages in any normal sense of the word, because the messages are already on Twitter's systems and Twitter does not come into possession of the messages from some other source.  *See United States v. Smith*, 155 F.3d 1051, 1055 n.7 (9th Cir. 1998) (defining an "acquisition" under the Wiretap Act as "the act of acquiring, or coming into possession of").[8]

Moreover, by Plaintiff's own characterization, the alleged wrongful processing of DM links occurs when DMs are on Twitter's internal servers, not when they are passing over wires or other means of transmission.[9]  While Plaintiff has not acknowledged this in the complaint, it is the only reasonable inference to be drawn from (1) his general allegation that Twitter's

---

[6] To expand on the football analogy from Note 4 above, there can be no pass interception where the quarterback never throws the ball; similarly, there is no "interception" under the Wiretap Act where the communication stays within the internal systems of the ECS provider.

[7] 18 U.S.C. § 2510(4) (defining "intercept" as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.")

[8] This conclusion dovetails with the requirement of an intercepting "device."  In *In re Google, Inc. Privacy Policy Litigation*, Judge Grewal held that Google does not "intercept" user information on its servers and noted the lack of "any authority that supports … the notion that a provider can intercept information already in its possession."  No. C 12-01382 PSG, 2012 WL 6738343, at *6 (N.D. Cal. Dec. 28, 2012).  Similarly, there can be no "acquisition" of information where Twitter applies processing to messages already in its possession.

[9] Courts have recognized that an ECS provider's processing of communications generally occurs on servers.  *See, e.g.*, *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 503 (S.D.N.Y. 2001) (noting that DoubleClick's algorithms for processing communications to deliver targeted ads are run on its servers).

Cooley LLP
Attorneys At Law
San Francisco

8.

Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

processing of messages occurs on servers,[10] and (2) his more specific allegation that the interceptions at issue involve "Twitter's algorithms" being applied to process DM links.[11] Plaintiff fails to ever allege that the purportedly wrongful processing of DMs (which consists of multiple steps involving "read[ing] through the Direct Message, identify[ing] the hyperlink, and replac[ing] it with its own custom link," FAC ¶ 3) occurs in the virtually instantaneous moments when messages are being transmitted over wires or other media.  *See Konop*, 302 F.3d at 878 & n.6 (the "transmission time" of electronic communications "is very short because [an electronic communication] travels across the wires at the speed of light.").[12]  Because Twitter's processing of DMs occurs when the messages are on its servers, this case is directly analogous to those in which Wiretap Act claims were dismissed because the communications at issue were in "interim storage" on servers.  *See Theofel*, 359 F.3d at 1075 (access to emails on an ISP's servers not an "interception"); *Bunnell,* 567 F. Supp. 2d at 1152 (access to emails on a company's email servers not an "interception").

Because Plaintiff cannot allege any "acquisition" of DM contents when they are actually "in transmission," and effectively concedes that the processing at issue occurs only on Twitter's own systems, his Wiretap Act claim must be dismissed with prejudice.

**2.    The alleged wrongful conduct falls within the "ordinary course of its business" exception under the Wiretap Act.**

Plaintiff's Wiretap Act claim also fails because all of the alleged wrongful conduct is part of Twitter's ordinary course of business.  Based on the basic definitions in the statute,[13] "the

---

[10] (*See* FAC ¶¶ 40-41 (alleging clicks on DM links are routed to "Twitter's analytics servers"); *id.* ¶ 47 (alleging that users clicking on links in DMs are "rerouted through Twitter's servers").)

[11] (FAC ¶ 3.)

[12] Plaintiff's conclusory allegation that the challenged processing occurs "in transit" does not change this result.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions . . . will not do. . . . Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (internal quotation marks, citation omitted).

[13] This exception is based on the basic definitions of the Wiretap Act.  An "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication *through the use of any electronic, mechanical, or other device*." 18 U.S.C. § 2510(4) (emphasis added).  An "electronic, mechanical, or other device" in turn is defined to *exclude* "(a) any telephone or telegraph instrument, equipment or facility, or any component thereof . . .  (ii) being used by a provider of wire or electronic communication service *in the ordinary course of its business* . . . ." 18 U.S.C. § 2510(5) (emphasis added).

Cooley LLP
Attorneys At Law
San Francisco

9.

Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

Wiretap Act creates an exception for interceptions conducted by an electronic communications service provider occurring in 'the ordinary course of its business.'"   *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 841 (N.D. Cal. 2014).

While courts in this District have applied different standards in applying the "ordinary course" exception, the proper interpretation is set forth in *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ("*In re Google Privacy Policy*").   In *In re Google Privacy Policy*, Magistrate Judge Grewal analyzed the relevant statutory terms and found that the exception applies broadly to "protect[] a provider's customary and routine business practices" and is not limited to functions tied to the provision of the communication service itself.   *Id.* at *10.   As the Court explained:

> The text exempts from the definition of "intercept" any use of a device by a provider "in the ordinary course of its business."   Rather than narrowing the exemption to only the provision of electronic communications services itself, or some such narrower scope, Congress specifically chose the broader term "business" that covers more far[]ranging activity. For good measure, Congress also teamed the term "business" with the terms "ordinary course," suggesting an interest in protecting a provider's customary and routine business practices.

*Id.*   The Court rejected the plaintiff's narrow interpretation of the exemption, which was limited to "only action taken to deliver the electronic communication," as inconsistent with the plain meaning of the statute.   *Id.*   The statutory text confirms the broad scope of the exception—in addition to using the broad terms "business" and "ordinary course,"[14] the exception exempts an ECS provider from liability for conduct in the ordinary course of "*its*" business—meaning the exception must be applied based on the particular business practices of the entity at issue and not a generic set of practices that are assumed to apply to all ECS providers.

In addition to *In re Google Privacy Policy*, courts outside the Ninth Circuit have also applied the "ordinary course of its business" exception in this way.   For example, in *Hall v.*

---

[14] In normal usage, "business" broadly encompasses "the activity of making, buying, or selling goods or providing services in exchange for money" or "the amount of activity that is done by a store, company, factory, etc."; while the term "ordinary" is defined as "normal" or "usual."   *See* Merriamwebster.com,   available   at   http://www.merriam-webster.com/dictionary/ordinary   (last visited October 28, 2015) and http://www.merriam-webster.com/dictionary/business (last visited October 28, 2015); *see also Smith v. United States*, 508 U.S. 223, 229 (1993) (relying on dictionary definitions to construe a statutory term).

Cooley LLP
Attorneys At Law
San Francisco

10.

Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

*EarthLink*, the Second Circuit found that EarthLink's ongoing receipt of emails sent to a closed account (instead of bouncing them back to the sender) was protected from liability because it was EarthLink's normal "practice at the time" to do so, rejecting plaintiff's contention that EarthLink's practice was "not within any ISP's ordinary course of business."  396 F.3d at 505. Similarly, in *Kirch v. Embarq Management Co.,* the Tenth Circuit held that where an ISP allowed another company to conduct a test collection of its customers' Internet browsing histories, the ISP was protected from liability because the test gave the ISP "access to no more of its users' electronic communications than it had in the ordinary course of its business as an ISP."  702 F.3d 1245, 1250 (10th Cir. 2012).  Notably, the "ordinary course" exception applied in *Kirch* even though the data was collected and used for "directing online advertising" to the ISP's users and not for the direct purpose of transmitting its users' communications.

Twitter's processing of links in DMs should be afforded the same protection from liability.  There is no dispute that Twitter qualifies as an ECS provider under the statute, because it provides a direct messaging service for its users.  Nor does Plaintiff dispute that the processing of links in DMs is part of Twitter's routine and customary business practice.  Indeed, Plaintiff acknowledges that every DM undergoes this processing in the normal course of Twitter's operations.[15]  Plaintiff further concedes that processing links in DMs serves important business purposes by "protect[ing] users from malicious sites that engage in spreading malware, phishing attacks, and other harmful activity."  (FAC ¶ 21 (quoting Twitter's link service FAQ page).)

Despite conceding the benefits of Twitter's processing of DM links, Plaintiff complains that Twitter also processes DM links to enable better tracking of (1) Twitter's value as a referral source of traffic to other websites, and (2) the links that are of most interest to Twitter users. (FAC ¶¶ 19, 21, 22.)  Assuming that this is true for purposes of the motion to dismiss, Plaintiff is fundamentally conceding that it is within Twitter's "ordinary course" of business to attract advertisers, which allows Twitter to provide a free service to hundreds of millions of users

---

[15] *See, e.g.*, FAC ¶ 62 (processing applies "in the course of *each such* message's transmission.") (emphasis added); FAC ¶ 24 (Twitter's processing applies to "*every Direct Message* while in transit to, at the least, identify and modify hyperlinks.") (emphasis omitted and added); FAC ¶ 29 ("Twitter intercepts and reads the contents of *each* Direct Message . . . .") (emphasis added).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-CV-04191-WHA

1    worldwide.

2       In fact, several courts have recognized that it is a routine business model for technology

3    companies to provide free services funded by advertising.  *See, e.g.*, *In re iPhone Application*

4    *Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (collection of data for advertising purposes is

5    "routine commercial behavior") (citation omitted); *Kirch v. Embarq Mgmt. Co.*, No. 10-2047-

6    JAR, 2011 WL 3651359, at *8 n.42 (D. Kan. Aug. 19, 2011) (collection of data for advertising

7    serves "legitimate business purposes" and "behavior advertising is a widespread business [that] is

8    commonplace on the Internet").  Because Twitter's processing of links in DMs is performed in

9    the normal course of its operations and serves legitimate (and essential) business purposes, it is

10   protected by the "ordinary course" of business exception.

11      In an attempt to avoid squarely placing his claim within an exception to the Wiretap Act,

12   Plaintiff alleges that processing DM links is not "necessary."  (*See, e.g.*, FAC ¶ 65.)  This is an

13   apparent reference to the *In re Google Gmail* case, where Judge Koh ruled the "ordinary course"

14   exception applies only where an ECS provider's processing "facilitates the transmission of the

15   communication at issue or is incidental to the transmission of such communication . . . the

16   exception would apply here only if the alleged interceptions were an instrumental part of the

17   transmission of email."  *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 U.S. Dist.

18   LEXIS 172784, at *27 (N.D. Cal. Sept. 26, 2013).

19      The Court should not impose a similar "necessity" requirement here, for several reasons.

20   First, no such requirement appears on the face of the statute, which uses the broad terms

21   "ordinary" and "business" as described above, without any qualifier to suggest an ECS provider is

22   protected only for conduct "necessary" or "incidental" to the transmission of a communication.

23   Second, related provisions in the Wiretap Act confirm that Congress intentionally excluded a

24   "necessity" requirement from the "ordinary course of its business" exception.  Congress specified

25   in another provision of the Wiretap Act that *employees* of a service provider are shielded from

26   liability for acts in the normal course of employment, but only if the acts are "necessary."[16]  The

27   _____

28   [16] "It shall not be unlawful under this chapter for . . . an **officer, employee, or agent** of a provider
     of wire or electronic communication service, whose facilities are used in the transmission of a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-CV-04191-WHA

omission of any similar requirement to the "ordinary course of its business" exception shows Congress intentionally omitted such a limitation.  *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citations omitted).

Third, the weight of authority in this District has rejected a "necessity" requirement as a condition of the "ordinary course of its business" exception.  *See In re Google Privacy Policy,* 2013 WL 6248499, at *11 (holding that the "exception is not limited to actions necessary to providing the electronic communication services"); *Campbell*, 77 F. Supp. 3d at 844 (holding that the "ordinary course of its business" exception is available for a business practice "even if it *does not actually facilitate* the service") (emphasis added).

In any event, Twitter's processing of links in DMs **is** necessary.  As noted, Plaintiff concedes Twitter must process links to "protect[] users from malicious sites that engage in spreading malware, phishing attacks, and other harmful activity."  (FAC ¶ 21.)  The fact that Twitter also processes DM links for additional reasons that Plaintiff alleges are unnecessary does not deprive Twitter of the ordinary course of business exception.  In *Kirch,* the Court applied the exception to alleged interceptions that enabled "directing online advertising" to users, because the interception gave the ISP "access to no more of its user's electronic communications than it had in the ordinary course of its business as an ISP."  702 F.3d at 1246-47, 1250.  In other words, where an ECS provider accesses the same data it normally accesses in the ordinary course, the exception applies even if the data is used for additional purposes.  Similarly here, Plaintiff has already conceded that Twitter must process links in DMs to provide basic features like malware protection and given that concession, Plaintiff cannot second-guess additional business purposes that are supported by the very same sort of processing.

---

wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any ***activity which is a necessary incident*** to the rendition of his service . . . ."  18 U.S.C. § 2511(2)(a)(i) (emphasis added).

Cooley LLP
Attorneys At Law
San Francisco

13.

**Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA**

### 3.   Plaintiff expressly consented to Twitter's processing of DM links.

Further, there can be no Wiretap Act liability where "one of the parties to the communication has given prior consent to" the acts constituting the alleged interception. 18 U.S.C. § 2511(2)(d). The consent exception applies where an individual has agreed to an ECS provider's terms of service authorizing the processing of communications. *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1029-30 (N.D. Cal. 2014) (dismissing Wiretap Act claim where email users explicitly consented to Yahoo's practice of scanning and analyzing email).

Here, Plaintiff concedes he agreed to Twitter's TOS,[17] which incorporates and links to its Privacy Policy.[18] Collectively, these terms notify users of the practices at issue, in multiple ways.

*First*, the Privacy Policy provides that:

> Twitter **may keep track of how you interact with links across our Services**, including our email notifications, third-party services, and client applications, **by redirecting clicks or through other means**. We do this to help improve our Services, to provide more relevant advertising, and to be able to share aggregate click statistics such as how many times a particular link was clicked on.

(Wong Decl. Ex. 4 (emphasis added).) Here, Twitter transparently discloses that it tracks users' interactions with links in Twitter's "Services,"[19] which includes DMs, through redirection of clicks, and further explains why this information is tracked. (*See* FAC ¶¶ 19-22.) By agreeing that Twitter can track Plaintiff's interactions with links, Plaintiff has agreed that Twitter can process the links he included in his DMs.

*Second*, Twitter also discloses that it can modify or change the content of DMs:

> We may **modify or adapt your Content** in order to transmit, display or distribute it over computer networks and in various media and/or **make changes to your Content** as are necessary to conform and adapt that Content to **any requirements or limitations** of any networks, devices, services or media.

---

[17] Plaintiff concedes he is bound by the TOS by attaching the current version as an exhibit to the FAC. (*See* FAC ¶ 45.)

[18] Twitter's TOS provides "[a]ny information that you or other users provide to Twitter is subject to our Privacy Policy, which governs our collection and use of your information. You understand that through your use of the Services you consent to the collection and use (as set forth in the Privacy Policy) of this information . . . ." (FAC, Ex. A at 2.) The text "Privacy Policy" appears as a link in the TOS that users can click to access that policy.

[19] The TOS defines "Services" as "our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services . . . and our other covered services that link to these Terms." (FAC, Ex. A at 1.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-CV-04191-WHA

(FAC, Ex. A at 3 (emphasis added).)  Users thus agree that Twitter can modify or adapt links (as a form of "Content"[20]) to meet any limitation or requirement of Twitter's "Services."  This provision plainly applies to the processing of links in DMs, which is necessary to meet Twitter's requirement that DMs not proliferate malicious URLs.  Further, Plaintiff alleges that Twitter processes DM links to address inherent "limitations" of the Internet referral network that prevent websites from identifying Twitter as the source of Internet traffic to their web pages.  (FAC ¶¶ 18-20.)  This alleged purpose of DM processing falls squarely within the scope of the disclosure above.[21]

   ***Third***, the TOS provides:

> We also reserve the right to access, read, preserve, and disclose any information as we reasonably believe is necessary to . . . detect, prevent, or otherwise address fraud, security or technical issues, . . . or [ ] protect the rights, property or safety of Twitter, its users and the public.

(FAC, Ex. A at 4.)  Twitter reasonably believes it should attempt to curtail the proliferation of malware and phishing attacks to protect Twitter users.  That is one of the express purposes for scanning URLs, which Plaintiff consents to under the TOS.[22]

   In sum, the terms of the TOS and the Privacy Policy plainly disclose the practices at issue,[23] and Plaintiff's Wiretap Act claim must be dismissed in light of Plaintiff's express consent to these terms.  *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1029.

---

[20] The TOS defines "Content" as "any information, text, graphics, photos or other materials uploaded, downloaded or appearing on the Services."  (FAC, Ex. A at 1.)

[21] Until recently, the DM service had a 140-character limit, and mobile DM text messages continue to be subject to a 160-SMS-character limit in a single text; shortening links helps Twitter conform DMs to these limitations.

[22] Moreover, the Wiretap Act provides that it is *the interception itself* to which a party must provide consent—not the specific purpose.  *See* 18 U.S.C. § 2511(2)(d) (it is not unlawful "to intercept a[n] … electronic communication where … one of the parties to the communication has given prior consent *to such interception*") (emphasis added).   Thus, the consent exception to the Wiretap Act applies where a party to a communication consents to the act constituting the alleged interception—here, the accessing and processing of links in DMs.

[23] Plaintiff also alludes to Twitter's use of cookies to track users' internet activity.  (*See* FAC ¶¶ 41, 42.)  Plaintiff does not tie this allegation to any claim, presumably because Twitter discloses its use of cookies and because of existing precedent.  (Wong Decl. Ex. 4 at 3.) ("[W]e use cookies and similar technologies to collect additional website usage data . . . ."); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 519 (no Wiretap Act liability for use of cookies).

Cooley LLP
Attorneys At Law
San Francisco

15.

Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

**B.      Plaintiff's CIPA Claim Also Fails As A Matter Of Law.**

**1.      Section 631 does not cover DMs or other electronic communications.[24]**

Section 631 is limited to telephone and telegraph communications and cannot be applied to modern electronic communications like DMs that fall beyond the terms of the statute.[25]  This limitation is set forth expressly in the initial clause of Section 631, which addresses only taps and connections that involve a "*telegraph* or *telephone* wire, line, cable, or instrument."  Cal. Penal Code § 631 (emphasis added).  The second clause (beginning with "or who willfully…") reiterates that the statute covers only communications that are transmitted "over *any wire, line, or cable*, or [are] being sent from, or received at any place within this state," which ties to the initial limitation involving a "telephone or telegraph wire, line, cable, or instrument."  *Id.* (emphasis added).

While these express limitations of the statute are dispositive, canons of statutory interpretation further confirm that CIPA cannot be applied to DMs.[26]

*First*, applying CIPA to modern technologies like DMs violates the longstanding principle that statutes must be construed in light of the circumstances the legislature considered at the time

---

[24] The Complaint refers only to Section 631 and the private right of action under 637.2.

[25] Section 631(a) provides in full: "Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of section 1170, or by both a fine and imprisonment in the county jail or pursuant to subdivision (h) of Section 1170."  Cal. Penal Code § 631(a).

[26] The Court must determine how the California Supreme Court would address this issue of first impression.  *Kairy, Brown, Dickson, Osmun, Singhdietz v. SuperShuttle International*, 660 F.3d 1146, 1150 (9th Cir. 2011) ("In the absence of a controlling California Supreme Court decision, the [court] must predict how the California Supreme Court would decide the issue").  In *In re Google Inc. Gmail Litig.*, Judge Koh held that Section 631 applies to emails.  2013 U.S. Dist. LEXIS 172784, at * 79.  Twitter respectfully submits that this non-binding decision reached the wrong result given: (1) the text of the statute, (2) the clear legislative intent; and (3) binding precedent that bars interpretation of statutes to cover new technologies that a legislature did not contemplate.

of enactment.  For example, in *City of Richmond v. Southern Bell Telephone & Telegraph Co.*, 174 U.S. 761, 775-76 (1899), the Supreme Court held that the term "telegraph lines" did not encompass telephone technology after the statute's enactment, explaining, "[T]he question is . . . what was in [Congress's] mind when enacting the statute in question . . . . It is not the function of the judiciary, because of discoveries after the act of 1866, to broaden the provisions of that act…" *See also Sunset Tel. & Tel. Co. v. City of Pasadena*, 161 Cal. 265, 277 (1911) (holding that "telegraph" in a statute "must have meant only the kind of communication then known and in practical use" when the statute was enacted); *Ni v. Slocum*, 196 Cal. App. 4th 1636, 1650-51, 1653 (2011) (statute applicable to "signatures" did not include electronic signatures because "the Legislature did not anticipate the use of electronic signatures when it drafted the statute and has since taken no action that can be construed as approving them for this purpose.").  This established rule precludes Plaintiff from applying Section 631 to address electronic communications like DMs that the Legislature never considered and could not have foreseen in 1967 when it enacted a statute addressing interceptions of "telephone and telegraph" lines.

*Second*, statutes should not be construed in a manner that creates conflicts within the overall statutory scheme.  For example, in *Apple v. Superior Court*, 56 Cal. 4th 128 (Cal. 2013), the California Supreme Court held that while the Song Beverly Consumer Warranty Act was arguably broad enough to cover online transactions, the statute cannot be applied to online transactions because this would create inconsistencies in the statutory protections available to online merchants versus brick-and-mortar businesses.  *Id.* at 137.

Here, construing Section 631 to regulate the processing of DMs creates an irreconcilable inconsistency within CIPA, exposing providers of modern electronic communications services to unfair liability as compared to providers of other communications services.  When the Legislature enacted CIPA, it exempted communication services providers (at the time considered regulated utilities) from liability.[27]  If the Court were to impose the liability provision of Section 631(a) to Twitter's processing of DMs without applying the public utility exemption of Section 631(b),

---

[27] Because these providers were, at the time, regulated utilities, the statute's exemption is expressly directed at "public utilit[ies]."  Cal. Penal Code § 631(b).

Cooley LLP
Attorneys At Law
San Francisco

17.

Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

Twitter would be potentially liable in its capacity as the provider of the DM service, yet be deprived of the communication service provider exemption. This clear conflict highlights why CIPA should not be judicially expanded to regulate Twitter's processing of DMs.

**Third**, CIPA cannot be construed to address electronic communications because the Legislature specifically considered and rejected a proposal on this very expansion. In 1995, the Legislature considered a potential expansion of CIPA to cover certain types of electronic communications when it amended Penal Code Section 629, a statute that addresses wiretapping by law enforcement. At the time, the Senate Judiciary Committee observed that "[i]t is not clear that California law specifically protects e-mail and other electronic communications from improper interception by either private parties or law enforcement" and considered whether "the privacy laws [CIPA] be amended to expressly protect electronic communications from interception . . . ." (Wong Decl. Ex. 5 (California Bill Analysis, S.B. 1016 Sen., Reg. Sess., at 5 (1995)) (capitalized text omitted).[28] The Legislature opted to amend **only** Section 629 to specifically address "electronic communications,"[29] while declining to expand CIPA in similar fashion. (*Id.*) This decision confirms that the California legislature did not intend for CIPA to cover electronic communications, and the Court should dismiss the CIPA claim as a matter of law.

When the Legislature has intended to expand CIPA's scope, it has amended the statute. Specifically, the statute was amended in 1985 to cover communications involving cell phones (Wong Decl. Ex. 8 (S.B. 1431 Sen. Reg. Sess. (1985)), and again in 1990 to cover cordless phones (Wong Decl. Ex. 9 (Assemb. B. 3457 Assemb. Reg. Sess. (1990)). These amendments expressly specified how CIPA related to new technologies, and demonstrate that Section 631 is not a catch-all law that automatically evolves to cover new forms of communications. The Legislature has never amended CIPA to address DMs or other electronic communications, and Section 631 must be applied based on its intended limitations.

---

[28] The references to "Privacy Laws" refers to CIPA, which appears in the Penal Code as Section 1.5 of Title 15, and is entitled "Invasion of Privacy."
[29] Section 629 was amended to add subsection 51, which defines "electronic communications" and sets forth related terms. *See* Cal Penal Code § 629.51.

Cooley LLP
Attorneys At Law
San Francisco

18.

**Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA**

1

2.      **Even if CIPA covers electronic communications, Plaintiff's claim still fails for multiple reasons.**

2

3

*First*, CIPA, like the Wiretap Act, applies only to the interception of communications while in transit.  This requirement is expressly reflected in Section 631 which addresses tapping or connecting with the transmission line for the communication, and applies to the reading of a communication "*while the same is in transit* or passing over any wire, line, or cable . . ."  Cal. Penal Code §631(a).  As discussed above, there is no interception that occurs "in transit" here because this case deals exclusively with the internal processing of DMs within Twitter's systems.

4

5

6

7

8

*Second*, Plaintiffs fail to allege an "injury" as needed to state a CIPA claim.  CIPA provides a private right of action only to plaintiffs "*who [have] been injured* by a violation of this chapter  . . . ."  Cal. Penal Code § 637.2 (emphasis added).  While the statute does not require "actual damages" in the sense of monetary loss, there must nonetheless be some form of cognizable injury.  *Id*.  Because Plaintiff alleges no such injury (beyond the alleged "intrusion" into his "seclusion," which fails as a matter of law for the reasons set forth below), he is precluded from asserting a private right of action under CIPA.

9

10

11

12

13

14

*Third*.  CIPA cannot be construed to conflict with the protections for ECS providers under federal law.  In enacting these provisions, Congress expressed specific concern that conflicting state standards could "discourage potential customers from using innovative communications systems" and discourage ECS providers "from developing new innovative forms of telecommunications and computer technology."  (Wong Decl., Ex. 7 at 5.)  Reflecting these legislative concerns, courts have found that the Wiretap Act preempts overlapping state law regulations of electronic communications.  *See In re Google, Inc. Street View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1084-85 (N.D. Cal. 2011) (holding that the Wiretap Act preempts state wiretap statutes because the statute "comprehensively regulate[s] the interception of electronic communications such that the scheme leaves no room in which the states may further regulate.");  *Bunnell*, 567 F. Supp. 2d at 1154 (The Wiretap Act preempts CIPA claim regarding access to emails).

15

16

17

18

19

20

21

22

23

24

25

26

27

Here, even assuming that CIPA could be interpreted to govern electronic communications,

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

**DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-cv-04191-WHA**

it still cannot be applied in a way that undermines federal protections for ECS providers.  *See Ting v. AT&T*, 319 F.3d 1126, 1137 (9th Cir. 2003) ("Even when Congress has not occupied the field, we may still infer preemption if there is an 'actual conflict' between federal and state law."); *Pub. Util. Dist. No. 1 v. IDACORP, Inc.*, 379 F.3d 641, 650 (9th Cir. 2004) ("an aberrant or hostile state rule is preempted to the extent it actually interferes with the methods by which the federal statute was designed to reach [its] goal.") (citation omitted).  Accordingly, CIPA cannot be applied to impose liability on Twitter's processing of DMs because the routine business conduct of ECS providers is specifically protected under Section 2510(5)(a)(i), as discussed above.[30]  Thus, if the Court finds that the "ordinary course of its business" exception of the Wiretap Act applies, Plaintiff cannot circumvent that outcome by relying on the conflicting terms of CIPA.

### C.    Plaintiff Fails to State a Claim for Intrusion Upon Seclusion.

A claim for intrusion upon seclusion requires an: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).  Scrutiny of the "threshold elements" of privacy claims can "screen out claims that do not involve a significant intrusion on a privacy interest . . . ." *Loder v. City of Glendale*, 14 Cal. 4th 846, 893 (1997).  "If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law."  *Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 465 (9th Cir. 1997) (internal quotation marks, citation omitted).

#### 1.    Plaintiff fails to allege an injury-in-fact.

As an initial matter, Plaintiff alleges no actual harm from Twitter's alleged conduct.  Indeed, the FAC does not claim he suffered emotional or economic harm.  Without such

---

[30] Nor can CIPA be applied to impose liability for other acts that are expressly authorized by federal law as applied to ECS providers like Twitter.  *See, e.g.*, 18 U.S.C. § 2511(2)(a)(i) (permitting employees and agents of an ECS provider "to intercept, disclose, or use" electronic communications being transmitted by the ECS for normal business purposes including "the protection of the rights or property of the" ECS provider); *id.* (permitting ECS providers to engage in "service observing" and "random monitoring" of electronic communications).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-cv-04191-WHA

allegations, he has no Article III standing and his intrusion claim must be dismissed.  *See, e.g.*, *Low v. LinkedIn Corp.*, No.11-CV-01468-LHK, 2011 U.S. Dist. LEXIS 130840, at *14-15 (N.D. Cal. Nov. 11, 2011) (dismissing invasion of privacy claim because abstract allegations of economic and emotional harm were insufficient to establish standing); *In re Facebook Internet Tracking Litig.*, No. 5:12-md-02314-EJD, 2015 U.S. Dist. LEXIS 145142, at *26-27 (N.D. Cal. Oct. 23, 2015) (dismissing for lack of Article III standing invasion of privacy claim premised on "generalized assertions" of economic harm).[31]

### 2. Plaintiff fails to allege intrusion into a private place, conversation, or matter

The first element of the tort requires the plaintiff to prove a subjective expectation of seclusion that is also objectively reasonable.  *See Shulman*, 18 Cal. 4th at 231.  Notice or knowledge of the challenged practice may "inhibit [an individual's] reasonable expectations of privacy."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994).  Moreover, "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant."  *Id.* at 37.

**Notice and Consent.**  First, Plaintiff cannot claim he reasonably expected his DMs would be free from processing given the express disclosures in Twitter's TOS and Privacy Policy as discussed above.  As Judge Grewal explained in *In re Google, Inc. Privacy Policy Litig.*, there can be no reasonable expectation that data will be free from processing where the processing is openly disclosed.  2013 WL 6248499 at *16; *see also In re Facebook Internet Tracking Litig.* 2015 U.S. Dist. LEXIS 145142, at *34 n.5 (dismissing an intrusion into seclusion claim involving alleged access to "the IP addresses of the websites [plaintiffs] visit[ed]," because plaintiffs "should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing information") (internal quotations and citations omitted).

---

[31] Concurrently with this Motion, Twitter has moved for a stay pending the Supreme Court's upcoming decision in *Spokeo Inc. v. Robins*, No. 13-1339, which concerns the question of whether a plaintiff, suffering no actual injury, can nonetheless meet Article III's injury-in-fact requirement by pleading a bare violation of a statute that contains a private right of action.  Given that this intrusion claim arises from common law, these cases demonstrate that mere allegations of a state law privacy tort are insufficient.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-CV-04191-WHA

The same conclusion applies here in light of Twitter's disclosures, which put users on notice of the processing of links in DMs.

Indeed, Plaintiff's claim of intrusion upon seclusion is implausible because he expressly consented to the conduct at issue. *Hill*, 7 Cal. 4th at 26 (a plaintiff has no reasonable expectation of privacy where he or she consents to the behavior); *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1034 (N.D. Cal. 2014) (same). Plaintiff cannot maintain an intrusion upon seclusion claim based on processing that he consented to in the TOS and Privacy Policy.

**Specificity of Pleading.** Beyond these issues of disclosure and consent, Plaintiff's complaint is entirely conclusory and lacks the factual basis needed to state a plausible claim. For instance, in *Yahoo Mail*, the court held the users did not sufficiently allege their cause of action because "[t]he Complaint merely alleges that Plaintiffs' emails were 'private' without alleging any facts related to what particular emails Yahoo intercepted, or the content within particular emails"; thus, their allegations of a privacy violation under the California Constitution were "fatally conclusory." 7 F. Supp. 3d at 1041.

Plaintiff's complaint suffers from the same fatal defect. The FAC does not allege any facts related to the particular DMs Twitter allegedly intercepted, nor the content of such messages. Plaintiff does not plead any facts about the alleged URLs that were shortened or their subject matter that would give rise to an assertion that there was an intrusion into Plaintiff's seclusion. Accordingly, Plaintiff's bare allegations are insufficient to state a claim. *Id.*; *see also Zbitnoff v. Nationstar Mortg., LLC*, No. C 13-05221 WHA, 2014 WL 1101161, at *4 (N.D. Cal. Mar. 18, 2014) (Alsup, J.) (holding plaintiff failed to state privacy claim "with the required specificity" where she "merely state[d] that 'she had a reasonable expectation that defendants would preserve the privacy of [p]laintiff's private information'" and did "not identify exactly what private information" was allegedly disclosed).

### 3. Twitter's processing is not highly offensive or an egregious breach of social norms.

Plaintiff's claim also fails because he has not pled facts to show that the supposed intrusion was "highly offensive to a reasonable person." Indeed, an intrusion is only highly

Cooley LLP
Attorneys At Law
San Francisco

22.

Def. Twitter, Inc.'s Motion to Dismiss
Plaintiff's First Amended Compl.
Case No. 3:15-cv-04191-WHA

1    offensive if it constitutes an "*egregious* breach of the social norms." *Hernandez v. Hillsides, Inc.*,

2    47 Cal. 4th 272, 295 (2009) (emphasis added).  In determining whether an alleged intrusion meets

3    this stringent standard, courts consider "the degree of the intrusion, the context, conduct and

4    circumstances surrounding the intrusion as well as the intruder's motives and objectives, the

5    setting into which he intrudes, and the expectations of those whose privacy is invaded." *Deteresa*,

6    121 F.3d at 465 (quotation marks, citation omitted).  Because courts must make a threshold

7    determination of offensiveness, they may adjudicate this element as a matter of law.  *Miller v.*

8    *Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1483 (1986) ("there is a preliminary determination of

9    'offensiveness' which must be made by the court in discerning the existence of a cause of action

10   for intrusion").

11        Plaintiff's sole allegation here is as conclusory as it is insufficient.  (FAC ¶ 84

12   ("Defendant's intrusions are highly offensive to Plaintiff, and would likewise be highly offensive

13   to a reasonable person.").)  *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011), is

14   instructive.  In *Folgelstrom*, plaintiffs alleged that the defendant asked its customers for their ZIP

15   codes during purchases, without disclosing that it would use the customers' information to obtain

16   addresses and send them marketing materials.  *Id.* at 989.  The court held that the company's

17   actions were not highly offensive because using the plaintiffs' contact information to send

18   marketing materials was "routine commercial behavior."  *Id.* at 992-93.  The court noted that it

19   "found no case which imposes liability based on the defendant obtaining unwanted access to the

20   plaintiff's private information which did not also allege that the *use* of plaintiff's information was

21   highly offensive."  *Id.* (emphasis in original).

22        Here, Twitter processes DM links for technical and business reasons, none of which rises

23   to the level of "highly offensive" conduct.  Preventing malicious links is a benefit for Twitter

24   users and, by extension, the online community at large—the opposite of an "egregious breach of

25   social norms." This routine business conduct in no way constitutes "highly offensive" conduct.

26        Indeed, the conduct at issue is much less intrusive than the activity in other cases in which

27   courts rejected claims of privacy intrusions.  For example, *Folgelstrom* involved data obtained

28   *personally by the defendant's employees* (as compared to the purely automated processes here),

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

DEF. TWITTER, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPL.
CASE NO. 3:15-CV-04191-WHA

1   which was then correlated with other personal details to mail marketing materials to people's

2   homes.  195 Cal. App. 4th at 988.  In *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063

3   (N.D. Cal. 2012) the court held there was no "egregious breach of social norms" where the

4   defendant allegedly disclosed to third parties the "unique device identifier number, personal data,

5   and geolocation information" from individual's mobile devices, without authorization.  And in

6   *Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008) *aff'd,* 380 F. App'x 689 (9th

7   Cir. 2010), the Court held that negligence leading to theft of highly personal information,

8   including social security numbers, did not "approach [the] standard" of actionable conduct under

9   the privacy claims at issue.  By contrast, Twitter is not alleged to have caused any harm, or

10   disclosed anything to any third parties, or to have done anything except to shorten a URL through

11   an automated process.  This is not a tortious "intrusion" into anyone's "seclusion," particularly,

12   where, as here, Plaintiff has not even alleged he has stopped sending DMs.

13   **V.     CONCLUSION**

14         For the reasons described above, Twitter respectfully asks this Court to dismiss this case

15   in its entirety and with prejudice.

16

17   Dated: November 9, 2015                COOLEY LLP
                                           MICHAEL G. RHODES (116127)
18                                         WHITTY SOMVICHIAN (194463)
                                           KYLE C. WONG (224021)
19                                         DEVON HANLEY COOK (262626)

20                                         /s/
                                           _____
21                                         Whitty Somvichian (194463)
                                           Attorneys for Defendant Twitter, Inc.

22

23

24   123747608

25

26

27

28