COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
DEVON HANLEY COOK (262626) (dhanleycook@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Defendant
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILFORD RANEY, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>        v.<br><br>TWITTER, INC.,<br><br>                     Defendant. | Case No.  3:15-cv-04191 WHA<br><br>**REPLY IN SUPPORT OF DEFENDANT TWITTER, INC.'S MOTION FOR STAY OF PROCEEDINGS**<br><br>Date:         January 28, 2016<br>Time:        8:00 a.m.<br>Courtroom: 8 - 19th Floor<br>Judge:       The Hon. William Alsup<br>Trial Date:  Not yet set |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

**Table of Contents**

**Page**

I.   INTRODUCTION ...........................................................................................................1
II.  ARGUMENT .................................................................................................................2
   A.  Plaintiff's Speculation That The *Spokeo* Decision Will Only Impact FCRA Cases Is Unfounded. ........................................................................................2
   B.  Twitter Will Face Unnecessary Hardship if Required to Proceed with Discovery and Class Certification Briefing Before *Spokeo* is Decided. ..........9
   C.  Plaintiff Will Not Be Prejudiced By a Maximum Four Month Stay. .................12
III. CONCLUSION ............................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Angelucci v. Century Supper Club*,
  41 Cal. 4th 160 (2007) .................................................................................................... 11

*Blumhorst v. Jewish Family Servs. of L.A.*,
  126 Cal. App. 4th 993 (2005) ......................................................................................... 11

*Boise v. ACE USA, Inc.*,
  No. 15-Civ-21264-COOKE/TORRES, 2015 U.S. Dist. LEXIS 87200 (S.D. Fla.
  July 6, 2015) .................................................................................................................... 10

*Clifford S. v. Super. Ct.*,
  38 Cal. App. 4th 747 (1995) ........................................................................................... 11

*Doe v. Selection.com*,
  No. 15-cv-02338-WHO, 2015 WL 5853700 (N.D. Cal. Oct. 8, 2015) ........................... 8

*Duchene v. Westlake Servs, LLC*,
  No. 2:13-cv-01577, 2015 U.S. Dist. LEXIS 139269 (W.D. Pa. Oct. 13, 2015) ........... 6, 7, 9, 13

*Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. & Annuity Corp.*,
  No. CV 15-04767-AB, 2015 U.S. Dist. LEXIS 148476 (C.D. Cal. Oct. 19, 2015) .......... 9

*FormFactor, Inc. v. Micronics Japan Co.*,
  No. CV-06-07159 JSW, 2008 U.S. Dist. LEXIS 13114 (N.D. Cal. Feb. 11, 2008) .......... 8

*Gustavson v. Mars, Inc.*,
  No. 13-cv-04537-LHK, 2014 U.S. Dist. LEXIS 171736 (N. D. Cal. Dec. 10,
  2014) ................................................................................................................................ 11

*Herman v. Salomon Smith Barney, Inc.*,
  266 F. Supp. 2d 1208 (S.D. Cal. 2003) ............................................................................ 7

*Holmes v. Cal. Nat'l Guard*,
  90 Cal. App. 4th 297 (2001) ........................................................................................... 11

*Larroque v. First Advantage LNS Screening Sols.*,
  No. 15-cv-04684-JSC, 2016 U.S. Dist. LEXIS 139 (N.D. Cal. Jan. 4, 2016) ............ 5, 12

*Lennartson v. Papa Murphy's Holdings, Inc.*,
  No. C15-5307 RBL, 2016 U.S. Dist. LEXIS 725 (W.D. Wash. Jan. 5, 2016) ................. 6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................................... 4

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

**REPLY IN SUPPORT OF DEF. TWITTER, INC.'S MOTION FOR STAY OF PROCEEDINGS**
**3:15-CV-04191 WHA**

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Pierson v. News Grp. Pubs., Inc.*,
    549 F. Supp. 635 (S.D. Ga. 1982) ............................................................................................ 6

*Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*,
    407 F.3d 631 (4th Cir. 2005) .................................................................................................... 6

*Rothstein v. Option One Mortg. Corp.*,
    CV 03-07135 FMC (RZx), 2003 U.S. Dist. LEXIS 20708 (C.D. Cal. Nov. 4,
    2003) ........................................................................................................................................ 7

*San Diego Padres Baseball P'ship v. United States*,
    No. 99-CV-0828 W (LSP), 2000 U.S. Dist. LEXIS 10987 (S.D. Cal. July 13,
    2000) ........................................................................................................................................ 8

*Schartel v. OneSource Tech., LLC*,
    No. 1:15 CV 1434, 2015 U.S. Dist. LEXIS 155967 (N.D. Ohio Nov. 17, 2015) ....... 5, 9, 10, 11

*Schmier v. Super. Ct.*,
    78 Cal. App. 4th 703 (2000) ................................................................................................... 11

*Spokeo, Inc. v. Robins*,
    No. 13-01339 ................................................................................................................. *passim*

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*,
    No. 15 C 5182, 2016 U.S. Dist. LEXIS 581 (N.D. Ill. Jan. 5, 2016) ........................................ 4

*Tel. Sci. Corp. v. Hilton Grand Vacations Co.*,
    No. 6:15-cv-969-Orl-41DAB, 2015 U.S. Dist. LEXIS 159479 (M.D. Fl. Nov. 20,
    2015) ..................................................................................................................................... 4, 9

**Statutes**

Cal. Pen. Code
    § 637.2 .................................................................................................................................... 12

Electronic Communications Privacy Act,
    18 U.S.C. §§ 2510 *et seq*. ................................................................................................ 4, 6, 7

**Other Authorities**

Fed. R. Civ. P. 26(f)(2) ............................................................................................................ 6, 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

**REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA**

## I. INTRODUCTION

Twitter seeks a brief stay of the proceedings pending the outcome of *Spokeo, Inc. v. Robins*, No. 13-01339, now before the Supreme Court. The Question Presented in *Spokeo* squarely addresses a threshold Article III standing issue that may dispose of the great bulk of this case's claims or at least significantly alter the course of this litigation. Absent a stay, the Court's and Twitter's time and resources will be wasted by diving into this litigation when the Supreme Court is poised to give guidance on the critical issue of standing. Should the Supreme Court reverse the Ninth Circuit and hold that a mere statutory violation does not meet Article III's standing requirements, that decision will have a profound impact on this case. Twitter would move to dismiss on that additional ground, and Plaintiff would likely challenge *Spokeo*'s applicability to this case using the arguments previewed in his Opposition to Twitter's Motion to Stay (*see* Opp. 4-6). Moreover, were the Supreme Court to require actual injury, the *Spokeo* decision would also create individualized differences among the members of the proposed class and shape the contours of the class certification issues in this case. (First Amended Class Action Complaint ("FAC") ¶¶ 49-52.) One or both parties could also seek to re-open fact and expert discovery, and re-brief class certification, to address these new issues. There is little sense in wasting months of intense litigation efforts when a short stay could alleviate these concerns. Indeed, since Twitter filed its opening brief, a number of courts have agreed and granted stays in similar situations.

Plaintiff's arguments against a temporary stay are meritless. First, Plaintiff argues that the *Spokeo* decision will not impact this case because it will address subjects unique to the statute at issue in that case, the Fair Credit Reporting Act ("FCRA"). But Plaintiff's attempted reading of the judicial tea leaves – which involves packaging four quotes from Justice Kagan and a stray comment from Justice Scalia as reflecting the questions of "a number of the justices" (Opp. 4) – flies not only in the face of the actual Question Presented, which addresses a far broader issue of standing, but also belies, as a full reading of the transcript reveals, a much more divided court. Plaintiff (whose attorneys are litigating *Spokeo*) may hope that the Supreme Court skirts the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

Question Presented when it issues its ruling, but his contorted speculation on the outcome of *Spokeo* provides no basis to deny a stay.

Second, Plaintiff contends the Court should deny the stay because Twitter has conceded that Plaintiff's common law claim (intrusion upon seclusion) will be unaffected by *Spokeo*, and discovery as to that claim overlaps with the claims that *Spokeo* would affect. Not so. Twitter has never argued that *Spokeo*'s decision would only affect two of Plaintiff's claims. Instead, it has always maintained that the Supreme Court's decision could have broad effects on the entire case. Because, as Plaintiff agrees, the intrusion claim has significant overlap with the statutory claims, it makes sense to wait until the *Spokeo* decision comes down to ensure that motion practice, discovery, class certification, and any other actions taken in relation to any claims that survive *Spokeo* can be done once and correctly rather than in piecemeal fashion or re-done because of the *Spokeo* ruling.

Plaintiff also claims that a temporary stay will greatly prejudice him because his injunctive relief claims must proceed without delay. These assertions ring hollow when Plaintiff did not bring a Temporary Restraining Order when he filed his suit, and waited for 8 weeks after filing suit before bringing a Motion for a Preliminary Injunction, despite *now* claiming that he is "scared" to communicate on Twitter. (Notably, the evidence adduced for that motion indisputably shows that Twitter uses the automated processing Plaintiff challenges to detect and prevent spam, malware, and other malicious abuses from affecting Plaintiff and other Twitter users.) Plaintiff cannot credibly claim prejudice from a four-month (maximum) delay on a motion he will not win, and certainly none that could override the overwhelming justifications counseling in favor of a stay.

**II.   ARGUMENT**

    **A.   Plaintiff's Speculation That The *Spokeo* Decision Will Only Impact FCRA Cases Is Unfounded.**

The Opposition is littered with claims that the *Spokeo* decision will not impact this case because the decision will narrowly focus on issues applicable to FCRA and not the Wiretap Act

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

or CIPA.  But Plaintiff's argument rests on pure speculation, is contrary to the question actually before the Court, and is irrelevant to this Motion.

*First*, Plaintiff tries to walk away from the Question Presented before the Supreme Court, claiming that this Court should focus instead on the Justice's questions at oral argument as a more accurate barometer of the opinion that will issue.  He then takes several quotes from only two of the Justices to make the claim that oral argument "strongly suggest[s] that the case will not turn on whether the Ninth Circuit is right or wrong that 'the violation of a statutory right' is 'a sufficient injury in fact to confer standing.'" (Opp. 4 (citations omitted).)  But, no one (including Plaintiff) can predict *Spokeo*'s outcome, let alone the nuances in the Justices' forthcoming opinion.  In fact, the issues raised during the November 2, 2015 oral argument confirm that *Spokeo* is too close to call,[1] so this Court and the parties should only rely on the scope of the Question Presented, as actually articulated, to assess the potential impact of that decision.

The Question Presented in *Spokeo* broadly asks whether Article III standing can arise from "the bare violation of a federal statute" when a plaintiff has suffered no concrete harm:

> Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute.

---

[1] *See, e.g.*, Amy Howe, "*Argument analysis: Second time around no easier for Justices in standing case*," SCOTUSBLOG (Nov. 2, 2015, 4:23 PM), http://www.scotusblog.com/2015/11/argument-analysis-second-time-around-no-easier-for-justices-in-standing-case/ (last visited Dec. 15, 2015) ("Let's start with what doesn't seem likely: a ruling that plaintiffs like Robins only have to allege a violation of a right created by a statute, without any need to show a concrete, 'real world' harm from the violation.  Of the nine Justices, only two – Justices Sonia Sotomayor and Ruth Bader Ginsburg – seemed open to this possibility. . . . On the other hand, some of the Court's more conservative Justices seemed ready to agree with Spokeo that Robins and others like him need to be able to point to actual harm from a violation of a statute, rather than just the violation of the statute itself."); David G. Savage, "Supreme Court may limit class-action lawsuits against tech industry," LOS ANGELES TIMES, http://www.latimes.com/nation/la-na-supreme-court-web-lawsuits-20151102-story.html (last visited Jan. 5, 2016) ("The U.S. Supreme Court justices, hearing arguments in a closely watched tech industry case, sounded poised Monday to limit mass lawsuits from people who sued after seeing false information about themselves online.… Justices Antonin Scalia and Anthony Kennedy joined with the chief justice in suggesting lawsuits must be limited to people who can show they suffered an actual injury.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

(Question Presented, *Spokeo Inc. v. Robins*, No. 13-01339 (U.S. Apr. 27, 2015), Exhibit A to the Declaration of Audrey Mott-Smith in Support of Defendant Twitter, Inc.'s Motion for Stay of Proceedings, ECF No. 35-1.) The Question Presented in *Spokeo* squarely positions the Supreme Court to issue a decision that will directly impact whether Plaintiff can satisfy Article III standing based solely on his allegations of a statutory violation of Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*. ("ECPA"). The fact that the Question Presented is posed in a case involving FCRA in no way indicates that the Supreme Court's holding will ultimately be limited to that statute alone. Indeed, Supreme Court decisions on Article III issues are applied broadly in contexts beyond the statute at issue in the initial decision. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (establishing Article III standing test in suit brought under the Endangered Species Act).

Moreover, since the oral argument, commentators have continued to note that the *Spokeo* decision will likely impact federal statutes and class action lawsuits beyond FCRA.[2] And in the two months since Twitter filed its Motion, courts have continued to stay cases pending the *Spokeo* decision, recognizing the decision's potential to broadly impact Article III standards for federal statutes. *See, e.g.*, *Tel. Sci. Corp. v. Hilton Grand Vacations Co.*, No. 6:15-cv-969-Orl-41DAB, 2015 U.S. Dist. LEXIS 159479, at *6 (M.D. Fl. Nov. 20, 2015) (granting motion to stay in Telephone Consumer Protection Act ("TCPA") case pending *Spokeo* decision, concluding that "the issue in *Spokeo* boils down to whether bare statutory violations are sufficient to confer Article III standing" and "[w]hile that case involves claims under the FCRA, the constitutional question extends to the TCPA" at issue there); *Tel. Sci. Corp. v. Asset Recovery Solutions, LLC*, No. 15 C 5182, 2016 U.S. Dist. LEXIS 581, at *8 (N.D. Ill. Jan. 5, 2016) (similarly granting motion to stay in TCPA case, noting that "at least six district courts" had already done the same);

---

[2] *See, e.g.*, Kendall, Brent, "Spokeo Case Stirs Supreme Court: The case involving the people-search website could have broad implications for class-action lawsuits," WALL STREET JOURNAL, Nov. 2, 2015, http://www.wsj.com/articles/spokeo-case-stirs-supreme-court-1446500803 (last visited Dec. 15, 2015) ("The case . . . has potential implications for class-action lawsuits as well as a range of federal laws in which Congress has given individuals the statutory right to sue and obtain monetary damages when their legal rights have been violated.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

*Larroque v. First Advantage LNS Screening Solutions*, No. 15-cv-04684-JSC, 2016 U.S. Dist. LEXIS 139 (N.D. Cal. Jan. 4, 2016) (granting stay in FCRA case pending a decision in *Spokeo*); *Schartel v. OneSource Tech., LLC*, No. 1:15 CV 1434, 2015 U.S. Dist. LEXIS 155967, at *2 (N.D. Ohio Nov. 17, 2015) (same).

And, even were the Court to indulge in Plaintiff's efforts at mind-reading, it is evident from oral argument that a clear majority of Justices at least do not believe that the mere pleading of a violation of a statute confers Article III standing. Legal commentators, including the one Plaintiff cites in his brief, agreed that the Court was highly skeptical of the Ninth Circuit's holding in *Spokeo*.[3]

While Twitter does not pretend to predict the outcome or parameters of the decision in *Spokeo*, the Question Presented and oral argument position the Court to alter (potentially significantly so) the standing requirement for actions involving federal statutory claims. If the Supreme Court holds that Article III demands more than a mere allegation of a statutory violation, the parties will need to brief the impact of the *Spokeo* decision on this case. That briefing would re-open Twitter's pending Motion to Dismiss and potentially cause Plaintiff to amend his complaint to add allegations of actual injury (if any such injury exists). If Plaintiff's amended

---

[3] The National Law Review, Spokeo Oral Argument Before the U.S. Supreme Court, http://www.natlawreview.com/article/spokeo-oral-argument-us-supreme-court (last visited Jan. 5, 2016) (cited Opp. 4 n.1) ("During the argument, most of the justices appeared to agree that some sort of concrete harm was necessary to confer Article III standing beyond the violation of a statute, but they disagreed as to whether the publication of inaccurate statements was sufficient."); Wystan Ackerman, "Thoughts on Supreme Court Oral Argument in Spokeo, Inc. v. Robins," Insurance Class Actions Insider, https://www.insuranceclassactions.com/2015/11/thoughts-on-supreme-court-oral-argument-in- spokeo-inc-v-robins/ (last visited Jan. 5, 2016) ("The Court seemed to be largely in agreement that there has to be some concrete harm beyond a mere statutory violation, and thus that the Ninth Circuit's opinion was incorrect or not well-written in at least some respects."); Maatman, Gerald L., Jr., et al., "U.S. Supreme Court Oral Argument in Spokeo, Inc. v. Robins," SEYFARTH SHAW LLP WORKPLACE CLASS ACTION BLOG, Nov. 2, 2015, http://www.workplaceclassaction.com/2015/11/u-s-supreme-court-oral-argument-in-spokeo-inc-v-robins/ (last visited Dec. 15, 2015) ("Indeed, the implications here would likely apply in a variety of other contexts, such as consumer class actions and other federal statutory claims. The questioning this morning reveals that Justices Kagan, Sotomayor, and Ginsburg might be receptive to the notion that the dissemination of false information in and of itself suffices to confer standing, whereas Chief Justice Roberts, and Justices Scalia, Breyer, and Alito might require a plaintiff to identify a harm beyond a technical violation of a statutory provision.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

1  complaint is able to survive beyond the pleadings stage, such new allegations would require
2  additional discovery not currently within the scope of the parties' "claims and defenses" under
3  Fed. R. Civ. P. 26(f)(2).  Further, a new injury requirement could inject individualized issues
4  among the "tens of thousands" of potential class members (FAC ¶ 50), introducing further
5  complications to the class certification analysis.  *See Lennartson v. Papa Murphy's Holdings,*
6  *Inc.*, No. C15-5307 RBL, 2016 U.S. Dist. LEXIS 725, at *12-13 (W.D. Wash. Jan. 5, 2016)
7  ("*Spokeo* could simplify or complicate the class certification process.  For example, it could limit
8  the size of Lennartson's putative class to those who paid their providers for each message Papa
9  Murphy's sent them [and, therefore, could allege actual harm].  Little advantage to proceeding
10 with discovery and motions practice in the interim exists.").  The *Spokeo* decision could therefore
11 completely disrupt the progression of this case, requiring the parties and the Court to revisit and
12 redo much of the work that would be done in the next four months.  As many courts have
13 recognized, the wiser and more efficient course is to stay proceedings pending *Spokeo*'s
14 resolution to allow the parties and the Court to address these issues all at once. (Twitter's Motion
15 to Stay ("Mot.") 6-8.)

16  ***Second***, Plaintiff argues that any decision by the Supreme Court in *Spokeo* will not alter
17 the standing calculus for either of his statutory claims. (Opp. 5.)  Regarding ECPA and CIPA,
18 Plaintiff claims that, as with the plaintiff in *Spokeo*, "'infringement of a property right' is an
19 actionable, concrete harm sufficient to establish standing, even without a showing of
20 consequential economic harm," and that these laws protect "'seclusion based privacy interests,'
21 which are rooted in property rights." (*Id.* (citation omitted).)  The only two cases he cites in
22 support of this convoluted proposition are wholly inapposite and do not even address standing.
23 *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 640 n.9 (4th Cir. 2005)
24 (discussing definition of privacy for insurance coverage purposes); *Pierson v. News Grp. Pubs.,*
25 *Inc.*, 549 F. Supp. 635, 640 (S.D. Ga. 1982) (concerning whether a physical intrusion occurred
26 under Georgia law). [4]  In any case, this esoteric privacy theory was discussed at the November 2

27
28 [4] A similar argument was rejected as a basis for denying a stay in *Duchene v. Westlake Services, LLC*, No. 2:13-cv-01577, 2015 U.S. Dist. LEXIS 139269 (W.D. Pa. Oct. 13, 2015).  In *Duchene,*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

1   oral argument, so Plaintiff's theory of standing was not only raised before the Supreme Court but

2   may be addressed in its forthcoming decision.  (*See also* Exhibit A to Plaintiff's Request for

3   Judicial Notice ("RJN Exh. A"), at pg. 8:16-22 (Petitioner argues, for example, "The Court has

4   also—it is also clear that in the property rights context, when Congress just doesn't create—or the

5   common law doesn't just create a right to sue but confers a property right . . . that any intrusion on

6   that property right, on that right to exclude, in tangible harm").)

7        As to CIPA alone, Plaintiff argues that *Spokeo* "concerns only *Congress's* ability to create

8   legal rights the invasion of which creates standing."  (Opp. 5.)  While the Supreme Court may

9   have reserved decision on an aspect of this argument, this contention is in direct conflict with

10  Ninth Circuit case law.  *See, e.g.*, *Herman v. Salomon Smith Barney, Inc.*, 266 F. Supp. 2d 1208,

11  1210 (S.D. Cal. 2003) (finding that because "it is undisputed that Plaintiff has suffered no injury

12  in fact," regardless of whether he has standing to bring his UCL claim in state court, "Plaintiff

13  does not retain Article III standing, and cannot pursue his claims in federal court"); *Rothstein v.*

14  *Option One Mortg. Corp.*, CV 03-07135 FMC (RZx), 2003 U.S. Dist. LEXIS 20708, at *4 (C.D.

15  Cal. Nov. 4, 2003) ("Here, it is undisputed that Plaintiff has suffered no injury in fact.  Plaintiff

16  admits that she has not been affected by any alleged violations, that she has suffered no damages,

17  that she is an 'unaffected plaintiff,' and that she has standing only in state court, not in federal

18  court.  Accordingly, Plaintiff does not have Article III standing, and cannot pursue her claims in

19  federal court.").

20       ***Third,*** Plaintiff contends that his pleading of an intrusion claim, which will not be directly

21  implicated by *Spokeo*'s decision, provides an additional reason to deny the stay.[5]  This is simply

---

the court granted a stay in a TCPA case over plaintiff's objection that "*Spokeo* has no bearing on the present litigation because there *is* an actual injury here – above and beyond the statutory violation," concluding that "[i]f *Spokeo* upends that present state of the law, questions surrounding Duchene's actual injury will *slingshot to the forefront of this case*, and Duchene's standing would be called into question."  *Id.* at *3 (emphasis added).

[5] Twitter notes that this claim did not appear in Plaintiff's original complaint, which sought relief only under ECPA and CIPA.  The intrusion upon seclusion claim was added just a few days after Twitter's counsel asked Plaintiff's lawyers whether they would consent to a stay pending the outcome of *Spokeo*.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

**REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA**

untrue.[6] As an initial matter, and contrary to Plaintiff's assertion, Twitter does not concede that "Plaintiff will have standing" for his intrusion upon seclusion claim. (Opp. 7.) This is at best a disingenuous representation, particularly given that Twitter's Motion to Dismiss, filed a month prior to Plaintiff's statement here, very clearly explained why Plaintiff lacks standing to pursue his intrusion upon seclusion claim. (Dkt. No. 33 at 20-21.) But even were this Court to permit this cause of action to proceed, there could be significant repercussions when *Spokeo* is handed down, given the significant overlap, as Plaintiff admits, between the allegations at issue in all three claims. Motion practice, discovery, class certification, expert testimony, and any other actions taken in relation to the intrusion claim alone could have to be re-done in whole or in part. Thus, to preserve the parties' and Court's time and resources, it makes sense to briefly stay the case until the Supreme Court issues its decision in *Spokeo* to ensure that this litigation proceeds in one course rather than in a piecemeal fashion, and does not have to be re-done because of the *Spokeo* ruling. *FormFactor, Inc. v. Micronics Japan Co.*, No. CV-06-07159 JSW, 2008 U.S. Dist. LEXIS 13114, at *11 (N.D. Cal. Feb. 11, 2008) (granting a stay of the entire action notwithstanding the fact that the claims and discovery of non-overlapping patents "will be different" because "the similarity of the patents in subject matter is sufficient to warrant staying this matter in order for this Court to gain the additional knowledge of the ITC proceedings and also for this Court to benefit from litigating the four patents in this action together, rather than separately"); *San Diego Padres Baseball P'ship v. United States*, No. 99-CV-0828 W (LSP), 2000 U.S. Dist. LEXIS 10987, at *5-7 (S.D. Cal. July 13, 2000).

In sum, Plaintiff's speculation that the *Spokeo* decision will be limited to FCRA issues provides no basis to deny a stay. Plaintiff may be hoping for a more limited ruling, but his

---

[6] Plaintiff relies on *Doe v. Selection.com*, No. 15-cv-02338-WHO, 2015 WL 5853700 (N.D. Cal. Oct. 8, 2015) to support his argument that the presence of his tort law claim counsels against a stay because "[d]istrict courts repeatedly have refused to stay litigation pending a ruling in *Spokeo* when, as here, the decision is unlikely to be completely dispositive of the litigation." (Opp. 3.) But Plaintiff's reliance on *Doe* is misplaced. The plaintiff in *Doe* does not allege any common law claims—only several statutory causes of action—and the court denied the stay because plaintiff pled *actual injury*, such that he could establish standing regardless of the outcome in *Spokeo*. Further, the court notes that a stay was inappropriate because the hearing for class certification was not set until July 6, 2016—*after* the *Spokeo* decision is expected.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

1   conjecture is irrelevant to whether a stay should issue. *See Eric B. Fromer Chiropractic, Inc. v.
2   N.Y. Life Ins. & Annuity Corp.*, No. CV 15-04767-AB (JCx), 2015 U.S. Dist. LEXIS 148476, at
3   *5 (C.D. Cal. Oct. 19, 2015) (granting stay in TCPA case pending *Spokeo* and rejecting plaintiff's
4   argument that the Supreme Court "might sidestep the issues relevant to this case" because that
5   "possibility exists with any case before the Supreme Court"); *Duchene*, 2015 U.S. Dist. LEXIS
6   139269, at *2 ("*Spokeo* itself deals with the Fair Credit Reporting Act, but a ruling in *Spokeo*
7   would likely have a direct impact [on] other statutory damages cases, such as the present TCPA
8   case."); *Schartel*, 2015 U.S. Dist. LEXIS 155967, at *2 (granting stay in FCRA case over
9   plaintiff's objection that *Spokeo* was distinguishable and argument that it was "highly
10  improbable" that *Spokeo* would impact the case).

11       If anything, Plaintiff's premature attempts to address a possible ruling in *Spokeo* (Opp. 4-
12  5) plainly demonstrate that additional briefing will likely be required after the Supreme Court
13  issues its decision. *See Tel. Sci. Corp.*, 2015 U.S. Dist. LEXIS 159479, at *8 (granting stay in
14  TCPA case because even "if the *Spokeo* Court were to adopt a middle ground . . . then the
15  forthcoming decision would guide this Court's analysis"). Were the Supreme Court to hold that
16  the mere allegation of a statutory violation is insufficient under Article III, Twitter will move to
17  dismiss the complaint for lack of standing, and Plaintiff will likely challenge *Spokeo*'s
18  applicability using the arguments foreshadowed here. This predictable need to assess *Spokeo*'s
19  impact reinforces why a stay is necessary to avoid gratuitous churn in the meantime.

20       **B.    Twitter Will Face Unnecessary Hardship if Required to Proceed with
21              Discovery and Class Certification Briefing Before *Spokeo* is Decided.**

22       Courts have agreed – in a variety of procedural circumstances – that pressing forward with
23  litigation before the *Spokeo* decision issues would force parties to needlessly incur potentially
24  significant expenses (to say nothing of the Court's expenditure of time and resources). *Tel. Sci.
25  Corp*,. 2015 U.S. Dist. LEXIS 159479, at *8-9 (granting motion to stay in TCPA case pending
26  *Spokeo* decision, noting that "this case is relatively young" and "[t]here is little advantage to
27  proceeding with discovery and motions practice where the viability of much of the claims is to be
28  shortly ascertained, especially considering that those claims will be the topic of such discovery

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

and motions practice"); *Schartel*, 2015 U.S. Dist. LEXIS 155967, at *4-5 (granting stay in FCRA case, finding that "all parties face the risk of unnecessary proceedings and expenses if the case is not stayed" because if the decision "results in this Court losing jurisdiction over this matter, the Court and the parties will have engaged in unnecessary and extensive discovery and motion practice"); *Boise v. ACE USA, Inc.*, No. 15-Civ-21264-COOKE/TORRES, 2015 U.S. Dist. LEXIS 87200, at *12-13 (S.D. Fla. July 6, 2015) (granting twelve month stay in TCPA case because without a stay "Defendant will be forced to endure onerous discovery and significant expenses, which may be needlessly incurred if the Supreme Court rules favorably for the Defendant" in *Spokeo*); (Mot. 9-10 (collecting cases)).

Plaintiff asserts that discovery in this case will not be unduly burdensome because the parties will not "be forced to engage in piecemeal discovery," as Twitter claims in its Motion to Stay. (Opp. 7.) But Plaintiff misapprehends Twitter's critical concern here. It is not that Twitter believes that discovery for the three claims will be totally different but, rather, that if *Spokeo* comes down and, for instance, requires plaintiffs to demonstrate actual injury to establish standing, the parties will likely have to engage in substantial amounts of new and different discovery and potentially re-do previous discovery (to say nothing of wading through additional motion practice). And given the briefing schedule entered by this Court, which requires briefing on class certification to be filed starting on March 10 (with class discovery presumably ending before that), the parties will have completed considerable discovery before the *Spokeo* decision comes down. Indeed, under the current schedule, the class certification briefs would be based on Plaintiff's current allegations (which lack any showing of actual injury) and fact and expert discovery on the parties' existing "claims and defenses." Fed. R. Civ. P. 26(f)(2).

If the Supreme Court decides that the bare violation of a federal statute does not establish Article III standing, Plaintiff would need to amend his complaint to allege an actual injury. That amendment would not only trigger the need for additional discovery on the new allegations, but would also add individualized issues concerning each potential class member's concrete injury that would likely defeat classwide treatment. *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 U.S. Dist. LEXIS 171736, at *9 (N. D. Cal. Dec. 10, 2014) (granting stay where "guidance

Cooley LLP
Attorneys At Law
San Francisco

10.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

from the Ninth Circuit . . . will . . . be material to any class certification decision in this case"). Proceeding without guidance from *Spokeo* could therefore require the parties to re-open discovery and re-brief both Twitter's motion to dismiss and Plaintiff's motion for class certification. A temporary stay of this matter is necessary to avoid the risk of incurring duplicative and wasteful litigation burdens. *Id.* at 8-9 (noting that the potential need to "re-depose key witnesses, conduct further discovery, and re-brief class certification" at "significant expenditure of time and resources" counseled in favor of a stay).

Finally, Plaintiff claims that even if *Spokeo* ultimately requires the dismissal of Plaintiff's claims from federal court for lack of standing, work done in the meantime will not be wasted because Plaintiff would simply file his claims in state court. (Opp. 10.) This argument has been considered and rejected. *Schartel*, 2015 U.S. Dist. LEXIS 155967, at *2 (staying FCRA case and rejecting plaintiff's argument that his state claims will proceed in state court "regardless of the outcome in *Spokeo*"). Plaintiff baldly states that discovery is "inevitable", whether in this court or in state court. (Opp. 7, 9.) However, while Plaintiff cites to a number of cases that suggest California courts find injury where there has been an "invasion of legally protected interests" (Opp. 9 (list cases)), those cases notably do not involve an individual without an actual injury. *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 177-78 (2007) (finding standing where plaintiffs alleged they paid more for service because of their gender); *Holmes v. Cal. Nat'l Guard*, 90 Cal. App. 4th 297, 315 (2001) (finding standing under the California Constitution's equal protection and freedom of association clauses for an officer challenging "Don't Ask, Don't Tell").[7] Where, as here, there is no allegation of injury, state courts have not hesitated to dismiss for lack of standing. *See Blumhorst v. Jewish Family Servs. of L.A.*, 126 Cal. App. 4th 993, 1001 (2005) (standing is a threshold element and a plaintiff who has "neither suffered nor is about to suffer any injury" lacks standing); *see also Schmier v. Super. Ct.*, 78 Cal. App. 4th 703, 708 (2000) (holding that plaintiff lacked standing because he failed to plead "any specific injury [that he] or those he purports to represent have suffered or will suffer"). The mere possibility of injury

---

[7] Plaintiff also cites *Clifford S. v. Super. Ct.*, 38 Cal. App. 4th 747, 751 (1995), which finds that plaintiff *lacked* standing because he was not entitled to state services, so is wholly inapposite.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

1  is not enough to confer standing. Thus, contrary to Plaintiff's assertions, discovery would not just
2  simply resume in state court were this case to be dismissed following the *Spokeo* decision, and
3  Twitter would have wasted a monumental amount of time, effort, and resources on this case.

4  Moreover, as to his CIPA claim, if Plaintiff cannot plead a concrete injury for purposes of
5  Article III, it is unlikely that he will be able to plead facts in state court to show that he "has been
6  injured" by the alleged CIPA violation. *See* Cal. Pen. Code § 637.2 (providing that "[a]ny person
7  *who has been injured* by a violation of this chapter may bring an action against the person who
8  committed the violation" to recover certain statutory damages) (emphasis added). Even though
9  "actual damages" are not required, *id.* § 637.2(c), that clarification does not obviate the need for a
10 civil claimant to demonstrate some form of injury (*e.g.*, reputational or other harm resulting from
11 the invasion of privacy into communications involving sensitive matters). Here, Plaintiff has not
12 even attempted to allege that he suffered any form of injury, instead relying on the statutory
13 violation alone. (FAC ¶¶ 68-79.) Plaintiff's failure to demonstrate an actual injury would result
14 in another dismissal before discovery could resume in state court.

15 Finally, Plaintiff offers no credible basis for why his speculation about potential state
16 court proceedings should influence this Court's decision regarding how to manage its own docket
17 and whether to stay these proceedings pending the Supreme Court's *Spokeo* decision on the
18 threshold issue of Article III standing. *See Larroque v. First Advantage LNS Screening Sols.*, No.
19 15-cv-04684-JSC, 2016 U.S. Dist. LEXIS 139, at *7 (N.D. Cal. Jan. 4, 2016) ("Even assuming
20 for the purposes of argument that Plaintiff would have standing to proceed in state court,
21 permitting this action to proceed in federal court will be an unnecessary waste of this Court's
22 judicial resources"). This Court is not merely a convenient way station for discovery while the
23 parties await a decision that could significantly alter the course of the litigation.

24 **C.     Plaintiff Will Not Be Prejudiced By a Maximum Four Month Stay.**

25 Plaintiff claims that staying this case for (at most) four months will prejudice him by
26 delaying resolution of his claim for injunctive relief. (Opp. 11.) But Plaintiff's suit is at an early
27 stage, and while he has moved for a preliminary injunction, he waited some time to actually file

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA

suit to enforce his rights and, further, has failed to meet his burden as detailed in Twitter's Opposition to the Preliminary Injunction motion.

Courts have continued to reject similar claims of prejudice, finding that plaintiffs in various procedural postures will not be harmed by a short stay. *Duchene*, 2015 U.S. Dist. LEXIS 139269, at *6-7 (noting that "numerous courts" have explained that a stay pending the *Spokeo* decision "will not be excessively burdensome or prejudicial because it will be of a short and definite duration" and therefore a "definitive (at most) nine month stay will not substantially prejudice either party"); (Mot. 10-11 (collecting cases)).  Plaintiff's claim that he will be unduly prejudiced by any delay – even when such delay would be for a maximum of four months – carries little credibility under these circumstances.

### III. CONCLUSION

For the foregoing reasons, and for the reasons discussed in Twitter's Motion, Twitter respectfully requests that the Court stay these proceedings pending the Supreme Court's decision in *Spokeo*.

Dated: January 8, 2016

COOLEY LLP
MICHAEL G. RHODES (116127)
WHITTY SOMVICHIAN (194463)
KYLE C. WONG (224021)
DEVON HANLEY COOK (262626)

*/s/ Whitty Somvichian*
Whitty Somvichian (194463)
Attorneys for Defendant
TWITTER, INC.

126196249

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

REPLY IN SUPPORT OF DEF. TWITTER, INC.'S
MOTION FOR STAY OF PROCEEDINGS
3:15-CV-04191 WHA